PER CURIAM.
Petitioner was found guilty, by the Director of the State Beverage Department, of a violation of Section 561.60, Florida Statutes, F.S.A. A civil penalty of Two Hundred Dollars and a suspension of his beverage license for ten days was imposed. A petition for certiorari was filed, as provided for in Section 561.29(7), Florida Statutes, F.S.A., alleging that the findings of fact and order departed from the essential requirements of law.
Section 561.60, Florida Statutes, F.S.A., provides:
“Each and every tap or spigot through which draft beer is served shall, on the handle of such tap or spigot in plain view of the consuming public, display the name of the beer being presently served through such tap or spigot.”
The facts are essentially these. Two beverage agents, upon entering the premises, made an inspection and found that four beer taps which were connected to the back wall listed on the taps that the same were for “Miller’s High Life”, “Ballentine Ale”, “Miller’s Dark”, and “Heinikens Imported”, and that the taps designated “Miller’s Dark” and “Heinikens Imported” were attached to the kegs of beer designated “Miller’s High Life”. One agent testified that Mr. Pierce, the bartender who was the only agent of the licensee present at the time, stated that “these taps weren’t used but they were hooked up”, and that no samples from the tap or any other tangible evidence pertaining to these taps were taken by himself or the other agent. The agents also testified that they did not examine both sides of the tap handle, but could only testify to that portion of the handle that was facing toward the patron’s side.
The petitioner testified that reversible tap handles were used and that the taps on the wall were not being used; no beer from the tap was ordered by the agents; no samples were asked for by them; and no beer of any kind was sold out of the taps in question. The manager for the beer company stated that such reversible taps *629 were quite in keeping with the company’s sales program and operation.
The record is devoid of any evidence that beer was “being presently served through such tap or spigot”, or that any of the taps in question were being used at the time.
The testimony taken in the most favorable light to the respondent shows that a reversible tap having on one side the words ■“Miller’s High Life” and on the opposite .side the words “Heinikens Imported Beer” was facing toward the patrons’ side of the "bar, and that the line running from such -tap was in a keg designated “Miller’s High Life Beer”. There was absolutely no evidence to show that the agents made an effort to ascertain that the tap in question was in operation or that there was any beer in the keg from which beer could have been drawn, which was the least the respondent was required to show in establishing that beer was “being presently served” from such taps.
The petitioner testifying on his own behalf, explained the nature of the reversible tap and the fact that the same was used primarily because of the demand for Miller’s High Life Beer and the type of patrons patronizing his establishment. He further pointed out on cross-examination that when the taps on the back wall were in actual operation, the label which was facing the patrons would correctly designate the beer then and there being served.
It does not appear that there was substantial, competent evidence to support the findings of fact, and therefore the order departs from the essential requirements of law.
The writ of certiorari is therefore granted and the order of the Director of the State Beverage Department is quashed.
It is so ordered.